UNITE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21736-CIV-MOORE/MCALILEY

ANTHONY BERNARD HOWELL,

        Plaintiff,

vs.

CAROLYN COLVIN, COMMISSIONER
of SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Summary Judgment [DE 20], and Defendant's Motion for Summary Judgment. [DE 23]. These matters were referred to me by the Honorable K. Michael Moore and are fully briefed. [DE 3, 25]. For the reasons set forth below, I recommend that Plaintiff's motion be granted, and Defendant's motion be denied.

I.    **Overview**

Plaintiff applied for disability insurance benefits and supplemental security income on February 18, 2011, alleging disability since January 28, 2011. Tr. 186-94[1]. His application was denied initially, and again on reconsideration. Tr. 87-94, 106-8. Plaintiff filed a request for a hearing by an Administrative Law Judge (ALJ). Tr. 109-11. That

---

[1] Citations to the transcript of proceedings before the Social Security Administration, filed at DE 12, are to "Tr. [#]."

1

hearing was held on June 24, 2013, at which Plaintiff and Nicholas Fidanza, a vocational expert (VE), testified. Tr. 30-82.

On January 29, 2014, the ALJ issued a written decision in which she found that Plaintiff was not under a disability as defined in the Social Security Act. Tr. 14-24. The Appeals Council denied Plaintiff's request for review of the ALJ'S decision, Tr. 1-6, making that decision the final decision of the Commissioner. Plaintiff now asks this Court to either remand the matter to the ALJ for an award of benefits, or alternatively, remand with instructions for the ALJ to re-evaluate Plaintiff's disability claim in light of the remand order. [DE 20, p. 24].

## II.   Proceedings before the Commission

### A.   Plaintiff's testimony[2]

Plaintiff testified that he attended Earlington Heights Elementary School and West View Middle School, where he was placed in special education classes. Tr. 47. He had difficulty with reading, writing and math, and stopped attending school in seventh or eighth grade. Tr. 47-8. He tried to earn his GED in night school, but stopped because he could not read or write. Tr. 48. Plaintiff testified that he cannot read or write. *Id.* He completed job applications by bringing them home and having somebody fill them out for him. Tr. 49. Plaintiff has poor memory and concentration, and suffers from depression. Tr. 49.

---

[2] The record contains some discrepancies regarding the claimed date of the on-set of disability, which was discussed at length at the hearing. Tr. 4-18. The ALJ ultimately found that Plaintiff had not presented evidence of disability prior to 2011. Tr. 25-7. Plaintiff does not challenge this determination.

2

In 1996, Plaintiff worked as a tile installer, and in 1995, he worked as a heavy equipment operator. Tr. 51-2. In 2004, Plaintiff hurt his back carrying 100 pound bags of sugar while making deliveries to bakeries and warehouses. Tr. 49-50, 53. After this injury, Plaintiff experienced pain down both his legs and weakness while walking. Tr. 56.

In January 2011, Plaintiff was injured in a motorcycle accident; he broke his pelvic bone, punctured his liver and suffered a collapsed lung. Tr. 57-8. A rod was surgically implanted, from his left pelvic bone to his left knee. Tr. 58-9. After the accident, Plaintiff spent a "couple of months" using a walker and he continues to walk with a cane. Tr. 57. Plaintiff also has pain in his left shoulder and his back. Tr. 61-3. He rates his shoulder pain as a 7 on a scale of 10, his left hip pain as 10 out of 10, and his back pain as 9 out of 10. *Id.* He also experiences numbness in his back and legs. Tr. 63-4.

Before his motorcycle accident, Plaintiff permanently injured his right hand in an altercation; the ring and pinkie finger do not close completely. Plaintiff is right-handed. Tr. 60. Because of this injury, Plaintiff has difficulty writing, and his hand swells. He can, however, use a fork and manipulate buttons. Tr. 61. He treats his pain with Tylenol or Aleve. Tr. 64. Plaintiff testified that he also gets bad headaches two or three times a week that last a couple of hours. Tr. 65.

Plaintiff does not do any household chores or shopping. He has not driven a car since he lost his license in 1997 for a DUI. Tr. 66. He has two adult children that he did not raise, and has been married for 12 years. Tr. 80-1. His wife has no children. Tr. 81. Plaintiff testified that he can usually sit for about 45 minutes before it becomes too painful, but at

3

the hearing he was unable to sit for that long without changing position. Tr. 67. He can walk for about half a block using a cane before he has to sit and rest for 10 to 15 minutes. Tr. 68. He stated that he has three to four bad days a week when both his back and hip are hurting. Tr. p. 67.

On a typical day, Plaintiff walks to a store that is two houses away from his house, using his cane. Tr. 68. He will watch TV for an hour and then lay down for three to four hours. Tr. 69. He can stand for 30 to 40 minutes at a time and cannot lift anything heavier than a water bottle. Tr. 70

### B. The VE's testimony

At the hearing, the VE testified that none of the skills from Plaintiff's past work were readily transferrable to sedentary work. Tr. 71. The ALJ then described to the VE a hypothetical person of the age, education and work history of Plaintiff who:

> can lift, carry, push, or pull up to ten pounds occasionally . . . can sit for 30 minutes at one time for four hours in an eight-hour workday. . . can stand for 30 minutes at a time for total of four hours in an eight-hour workday. . . .can walk for ten minutes at a time for a total of one hour in an eight-hour work day. . . must use a cane to ambulate. . . can reach, handle, finger, feel, push and pull continuously with the . . . right arm or the right hand. . . can reach overhead occasionally with left arm, can reach frequently in all other directions with the left arm and continuously handle, finger, feel, push or pull with the left arm. . . can never climb stairs, ramps, ladders, or scaffolds. . . . may occasionally perform other postural activities. . . must avoid all exposure to unprotected heights, [and] to moving mechanical parts.

Tr. 71-2. The VE testified that given this hypothetical, Plaintiff could not do his past relevant work, although there were other jobs available in the state and local economy, including "order clerk food and beverage", which Plaintiff could perform. Tr. 73. In

4

finding that Plaintiff could do this job, the VE assumed that Plaintiff had finished the seventh grade and had basic reading and writing skills. Tr. 73.

The ALJ then modified the hypothetical to further reduce Plaintiff's abilities to fingering *frequently* with the right hand, and reaching *occasionally* in all directions with the left upper extremity, as well as *never* climbing a ladder, rope or scaffold, stairs or ramps, but can perform other postural activities occasionally. Tr. 74-5. The VE testified that these additional limitations would result in there being no jobs that Plaintiff could perform. *Id.* The VE also testified that if Plaintiff was off task for 15% of the time, was absent three days a week, could only sit, walk or stand for one hour in a eight hour day, had to use a cane while standing, or had to lie down three hours in an eight-hour day, there would be no jobs he could do. Tr. 76-8.

C. **Administrative records**

The record before the ALJ includes medical records, educational records, and an affidavit from his mother, all of which the Court has carefully reviewed. I address only the administrative evidence that is relevant to the issues addressed below.

D. **The ALJ's decision**

As noted, in her written decision, the ALJ concluded that Plaintiff is not disabled. Tr. 14-24. The ALJ first found that Plaintiff has not engaged in substantial gainful activity since January 31, 2011. Tr. 16. Next, she found that Plaintiff has the severe impairments of post-traumatic arthritis of the left hip and left shoulder and degenerative disc disease of the lumbar spine, but he does not have an impairment or combination of impairments that

5

meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 16-8.

The ALJ then determined that Plaintiff had the residual functional capacity (RFC) to perform a

> A reduced range of sedentary work as defined in 20 CFR 416.967(a). The claimant can lift, carry, push, and/or pull up to 10 pounds occasionally. He can sit for 30 minutes at one time for a total of four hours in an eight-hour workday. He can stand for 30 minutes at one time for a total of four hours in an eight-hour workday. He can walk, with a cane, for ten minutes at one time for a total of one-hour in an eight-hour workday. He can occasionally reach overhead and frequently reach in all other directions with the non-dominant left arm. He can reach continuously with the dominant right arm. He can continuously engage in handling, fingering, feeling, and pushing bilaterally. He should avoid all exposure to unprotected heights and moving machinery.

Tr. 18. The ALJ also found that Plaintiff was 46 years old, has a limited education and is able to communicate in English. Tr. 22 The ALJ did not include any non-exertional limitations in the RFC. Tr. 18.

Applying these limitations, the ALJ found that Plaintiff cannot perform his past relevant work, but is not disabled because he is capable of performing other jobs that exist in the national economy. Tr. 22-4.

### III. Analysis

In evaluating a claim for disability benefits, the ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520:

> 1. Is the claimant performing substantial gainful activity? If not, the ALJ next determines;
>
> 2. Does the claimant have one or more severe impairment? If the claimant does, the ALJ next considers;

6

> 3. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled; if not, the ALJ must determine the claimant's RFC; and then determine;
>
> 4. Based on the RFC, can the claimant perform his past relevant work? If so, he is not disabled. If he cannot perform his past relevant work, the ALJ must finally determine;
>
> 5. Whether, based on his age, education, and work experience, and the RFC, can the claimant perform other work of the sort found in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

In reviewing the ALJ's decision, the Court must consider the record as whole and determine whether the ALJ applied the correct legal standard, and whether her findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips,* 357 F.3d at 1240, n. 8 (citation omitted). The substantial evidence standard does not permit a reviewing court to consider only those parts of the record that support the ALJ; the court must view the entire record and also consider evidence which detracts from the evidence relied on by the ALJ. *Mackie v. Astrue*, No. 1:07-cv-00098-MP-WCS, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008).

While the Court applies a presumption in favor of the ALJ's finding of fact, no such presumption applies to the ALJ's legal conclusions. Thus, the Court must reverse if the ALJ incorrectly applied the law, or if the decision fails to provide the court with sufficient

7

reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, * 5 (M.D. Fla. Jan. 22, 2008). The ALJ's failure to specify the weight given to evidence contrary to her decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, * 5 (M.D.Fla. Sept. 19, 2011). The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, * 5; 42 U.S.C. §405(g).

The parties do not dispute some of the ALJ's findings. There is no dispute that Plaintiff has not engaged in substantial gainful employment since January 31, 2011. Moreover, Plaintiff does not dispute that his impairments or combination of impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Rather, Plaintiff challenges the weight the ALJ gave to the medical opinions and other nonmedical evidence. Specifically, Plaintiff argues that the RFC improperly failed to include Plaintiff's cognitive impairment, depression and anxiety, right hand limitations, and need to use a cane while standing.[3] [DE 20, pp. 9-22]. The RFC is an assessment by the ALJ of a claimant's ability to work despite his impairments. *Lewis v. Callahan*, 125

---

[3] Plaintiff also argues that the ALJ erred when she did not find, at step two of the analysis, that his right hand injuries, depression and anxiety, and cognitive impairment are severe. [DE 20, pp. 11-5]. I do not need to determine whether the ALJ erred in this regard, because any such error at this step would be harmless. The ALJ found that Plaintiff had at least one severe impairment, "and that finding is all that step two requires." *Heatly v. Comm'r of Social Security*, 382 Fed.Appx. 823, 824-5 (11th Cir. 2010).

8

F.3d 1436, 1440 (11th Cir. 1997). In determining the RFC, the ALJ must consider all the relevant evidence. *Id.*

Plaintiff asserts that the ALJ's errors resulted in a RFC that is not supported by substantial evidence and understates his limitations, and the application of the flawed RFC resulted in the incorrect determination that he is not disabled.

### A. Plaintiff's non-exertional limitations

In considering Plaintiff's non-exertional limitations, the ALJ found that Plaintiff has mild limitations in activities of daily living, social functioning, concentration, persistence or pace, and no episodes of decompensation, and that this does not rise to the level of severe impairments. Tr. 16-8. The ALJ also found that Plaintiff does not have any cognitive impairment that would affect his ability to work. Tr. 21.

Plaintiff challenges the ALJ's failure to include his non-exertional limitations, in particular, his cognitive impairment, depression and anxiety, in crafting the RFC. [DE 20, p. 9-18]. Specifically, Plaintiff argues that the ALJ erred by failing to assign a weight to the opinions of Dr. David Echavarria, a consulting psychologist, and failing to properly consider Plaintiff's educational records and his testimony regarding his illiteracy.

#### i. Dr. Echavarria's opinions

Dr. Echavarria performed a consultative exam on Plaintiff on April 11, 2013. Tr. 625. In his report Dr. Echavarria's states that Plaintiff, a black male, presented as anxious, with an irritable mood. Tr. 625-6. Plaintiff indicated that his sleep, appetite and energy

9

were diminished. Plaintiff also reported auditory or visual hallucinations, paranoid ideation and suicidal ideation, without intent or plan. Tr. 626.

Upon testing, Dr. Echavarria found "[c]oncentration was fair in the interview and Claimant indicates not being able to sustain typical activities of attention and concentration and described those as diminished. Claimant is unable to do serial 3's or 7's. Claimant is unaware of current events and indicates not knowing the name [of] the president, i.e. 'black man'-which is an exaggeration on his part, and not knowing the governor and the mayor." Tr. 626.

Dr. Echavarria administered the Wechsler Adult Intelligence Scale-4th edition. Plaintiff obtained a verbal comprehension IQ score of 58, a perceptual reasoning IQ of 60, a working memory of 58, a processing speed of 50, and a full scale IQ of 51, which indicates mental retardation. *Id.* Dr. Echavarria found that this score was not valid for Plaintiff "given [*sic*] lifestyle of being married and going to 'school until the 10th grade in regular class, and raising a family with 2 children.'" Tr. 626.

On the Wechsler Memory Index, Plaintiff scored a 55 total memory composite, with an immediate memory composite and a delayed memory composite of 55. Dr. Echavarria found that these scores did not match his behavioral presentation or Plaintiff's lifestyle as "he is married, raising a family, etc." Tr. 626. Dr. Echavarria concluded that "Claimant's claim of ignorance, confusion, and disorientation with impairment of cognitive skills may require further neurological/neuropsychological assessment for an exhaustive answer." Tr. 626.

In filling out a Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Echavarria opined that Plaintiff had "problems with attention and concentration/ affecting cognitive areas." Tr. 628. These difficulties manifest themselves as mild restrictions in understanding, remembering and carrying out simple instructions and making judgments on simple work-related decisions; and moderate restrictions in understanding, remembering and carrying out complex instructions, and making judgments on complex work-related decisions. Tr. 628. Dr. Echavarria also found that Plaintiff had mild restrictions in his ability to interact appropriately with the public, co-workers and supervisors, and moderate restrictions in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 629.

### ii. The ALJ's failure to assign a weight to Dr. Echavarria's opinions requires remand

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ's failure to state with particularity the weight given to each medical opinion is reversible error. *Caldwell v. Barnhart*, 261 Fed.Appx. 188, 190 (11th Cir. 2008) (citation omitted). Here, while the ALJ extensively summarizes Dr. Echavarria's findings, and relies on some of his findings and rejects others, she does not articulate the weight that she gives his opinions, or the reasons for accepting or rejecting those opinions. Tr. 16-7, 21.

This failure is not harmless, as the Commissioner argues. [DE 23, p. 15-6]. *Ocasio v. Comm. of Social* Security, Case No: 6:14-cv-1635-Orl-GJK, 2016 WL 455459, * 3

(M.D. Fla. Feb. 5, 2016) (failure to weigh medical opinion very rarely results in harmless error). In particular, the ALJ rejected Plaintiff's claim that he is illiterate or has limited mental function, apparently relying on Dr. Echavarria's suggestion that Plaintiff exaggerated his limitations. Tr. 21. Dr. Echavarria, in turn, found that Plaintiff's very low IQ (which he acknowledged is consistent with mental retardation), and Memory Test scores, are not valid, a conclusion he based in large part on his unsupported belief that Plaintiff had finished the tenth grade in regular classes, was married and had raised two children. Tr. 626.

These assumptions are contradicted by educational records that indicate that Plaintiff was socially promoted in school, as he left school after the seventh grade and earned mostly D's and F's, [Tr. 288-94][4], and that he did not raise his children. Tr. 80-1. The ALJ does not address these discrepancies; indeed, the Court cannot tell from reading the decision if she was even aware of the contradictory information in the record when she accepted Dr. Echavarria's conclusion that Plaintiff exaggerated his cognitive deficits, as she makes no mention of this evidence.[5]

In contrast, and again without explanation, the ALJ did *not* adopt Dr. Echavarria's opinions that Plaintiff is moderately restricted in several areas of social functioning and

---

[4] Plaintiff also testified that he was placed in special education classes in elementary and middle school, and that he had difficulty in reading, writing and math. Tr. 47. He stopped going to school in seventh or eighth grade. He tried attending night school to get his GED, but stopped because he could not read or write. Tr. 48.

[5] On remand, the ALJ should also address the validity of Dr. Echavarria's conclusion, apparently made solely because Plaintiff is African-American, that Plaintiff's inability to name the United States President is "an exaggeration [on] his part." Tr. 626.

concentration, persistence and pace, finding instead that he was mildly impaired in these regards. Tr. 17-8. Yet, despite that finding, the ALJ did not include those mild non-exertional limitations in Plaintiff's RFC.

On this record, the Court cannot determine how much weight the ALJ gave each of Dr. Echavarria's opinions, or her basis for apparently accepting some of his opinions and rejecting others. This leaves the Court unable to determine if the ALJ's treatment of Dr. Echavarria's opinions is supported by substantial evidence.[6] *Winschel*, 631 F.3d at 1179 (without such a statement weighing the medical opinions "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.").

On remand, the ALJ should properly weigh Dr. Echavarria's opinions, and provide explanations for those opinions, after specifically considering whether his underlying assumptions are supported by substantial evidence, including Plaintiff's educational records and his testimony regarding his ability to read and write. *Gay v. Astrue*, No. 3:09-cv-679-JRK, 2010 WL 3220299, * 7 n. 8 (M.D. Fla. Aug. 13, 2010) ("Although an

---

[6] Plaintiff also argues that the ALJ should have ordered further testing of his cognitive limitations, including his ability to read and write. [DE 20, pp. 9-10]. "The ALJ generally has an obligation to develop the record, but is not required to order a consultative examination as long as the record contains sufficient evidence to make an informed decision." *Dunning v. Astrue*, No. 2:11-CV-1487-RDP, 2012 WL 3962843, * 4 (N.D. Ala. Sept. 11, 2012). On remand, after the ALJ has properly weighed Dr. Echavarria's opinions and considered Plaintiff's educational records and testimony, she should determine, using this standard, whether additional testing is necessary to allow her to make an informed decision about Plaintiff's cognitive limitations.

ALJ is not required to discuss every piece of evidence in a record, an ALJ cannot pick and choose which evidence supports a decision while disregarding evidence to the contrary.").

### iii. The ALJ must reevaluate her credibility determination

In crafting the RFC, the ALJ must consider a claimant's subjective testimony of pain and other symptoms when there is evidence of an underlying medical condition and (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition", or (2) the "objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). As set forth above, at the hearing, Plaintiff testified regarding the severity of his pain and non-exertional limitations. When, as here, a claimant provides testimony as to his subjective claim of disabling pain or other symptoms, the "ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations. . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and quotation marks omitted).

In considering Plaintiff's testimony, the ALJ found that "the testimony and statements of the claimant regarding persistence, severity, and limiting effects of his impairments are not fully credible," and articulated two reasons in support of her credibility finding. Tr. 21. First, she found that Plaintiff was exaggerating the limited use of his right hand because he had conceded that he was able to operate a throttle on a motorcycle and use a fork with his right hand. *Id.* Second, she extrapolated from Dr.

Echavarria's conclusion that Plaintiff had exaggerated his cognitive limitations in the consultative exam to conclude that Plaintiff's claims of illiteracy were not credible. Tr. 21.

In other words, the ALJ's credibility determination is based in part on Dr. Echavarria's opinions, which, for the reasons set forth above, the ALJ must reevaluate on remand. As a result, the ALJ's must also reevaluate her credibility determination on remand

### iv. The ALJ must account for any non-exertional limitations in the RFC

As noted above, at step two, the ALJ found that Plaintiff's depression and anxiety were not severe, but found that he has mild limitations in activities of daily living, social functioning, concentration, persistence or pace, and no episodes of decompensation. Tr. 17-8. The ALJ states in her decision that her RFC "reflects the degree of limitation" resulting from Plaintiff's mild impairments in activities of daily living, social functioning, depression and anxiety. Tr. 18. However, despite her findings of mild limitations, the ALJ did not include those limitations in the RFC.

"Once a case advances beyond step two, the ALJ must consider all impairments, severe or not, at step three and in assessing the RFC." *Gray v. Comm'r of Social Security*, 550 Fed.Appx. 850, 853 (11th Cir. 2013). The ALJ was thus required to account for these non-exertional limitations in the RFC, or provide an explanation for not doing so. It is possible that the ALJ concluded that Plaintiff's mild deficits did not result in work limitations, but because her decision says nothing about why the non-exertional limitations

were excluded from the RFC, the Court cannot determine if the ALJ applied the correct legal standard and if RFC is supported by substantial evidence.

On remand, the ALJ is directed to determine the extent, if any, of Plaintiff's non-exertional limitations after properly weighing Dr. Echavarria's opinions, and Plaintiff's educational records and testimony. The ALJ shall then either include those non-exertional limitations in Plaintiff's revised RFC, or explicitly state why she has not done so.

### B. Physical limitations

The bulk of Plaintiff's challenges to the denial of benefits concern the ALJ's treatment of his claims of non-exertional limitations. However, Plaintiff also argues that the ALJ erred in her evaluation of his physical limitation. Specifically, Plaintiff disputes her finding that his limitation in the use of his right hand is non-severe, and her failure to include in the RFC the limitation that he cannot stand without a cane. [DE 20, pp. 9, 11-12].

The ALJ's evaluation of Plaintiff's physical limitations relies in part on her determination that Plaintiff's subjective testimony regarding his pain and other symptoms is not fully credible. Tr. 18, 21. Because this matter is remanded for a new credibility determination, the ALJ should consider whether that new determination will alter her finding regarding Plaintiff's physical limitations. Because two of the arguments regarding Plaintiff's physical limitations will likely arise upon remand, I address them here.

First, the ALJ's determination that Plaintiff's right hand injury is not severe finds support in the opinion of Dr. Ubaldo Rodriguez, an orthopedic surgeon, who conducted a

16

consultative examination of Plaintiff on March 27, 2013. Tr. 571-572. The ALJ gave Dr. Rodriguez' opinions great weight, a determination that Plaintiff does not challenge. Tr. 22. Dr. Rodriguez found, in examining Plaintiff's right hand, that he had "a mild shortening of the 4th metacarpal. Flexion of the MP Joint of the 4th finger is 60 degrees. Extension is 0 degrees. The rest of the examination is normal." Tr. 572. On this record it appears that the ALJ's finding regarding Plaintiff's right hand is supported by substantial evidence.

Second, Plaintiff argues that the ALJ's failure to specifically address the affidavit of his mother regarding his physical limitations is reversible error. [DE 20, pp. 8-9]. While the ALJ can consider non-medical sources such as family members, these types of sources are insufficient to establish an impairment. 20 C.F.R. § 416.913. Here, the ALJ stated she considered the entire record, which included the affidavit. The ALJ is not required to specifically address every piece of evidence. *Dyer*, 395 F.3d at 1211 (the ALJ is not required to specifically refer to every piece of evidence in her decision).[7]

## C.    Summary

On remand, the ALJ should reweigh the Dr. Echavarria's opinions, state with particularity the weight to be given to each of his opinions and the reasons therefor, as addressed in this report and recommendation. The ALJ should then consider the full medical record, as properly weighted, as well as the other evidence in the record to evaluate

---

[7] Because I recommend that this matter be remanded for further consideration as set forth above, and remand may eliminate the necessity for resolving these issues, I do not reach Plaintiff's challenge to the ALJ's consideration of his age. As for Plaintiff's claim that had the ALJ properly credited his claimed limitations the VE's testimony would have required a finding of disability that is broadly addressed in this Report and Recommendation. [DE 20, pp. 18-9, 22-4].

17

Plaintiff's credibility and determine the RFC, and explicitly state the basis for that determination. Applying the revised RFC, the ALJ should proceed to step five of the required analysis, to make a final determination of Plaintiff's eligibility for disability benefits.

## IV. Recommendations

Based on the foregoing, I respectfully recommend that:

Plaintiff's Motion for Summary Judgment [DE 20], be GRANTED, and Defendant's Motion for Summary Judgment [DE 23], be DENIED, and the matter remanded for proceedings consistent with this report and recommendation.

## V. Objections

The parties may file any written objections to this Report and Recommendation with the Honorable K. Michael Moore no later than fourteen days from the date of this report and recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Locate v. Dagger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers in Miami, Florida, this 22nd day of June, 2016.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable K. Michael Moore
Counsel of record